We'll now hear United States v. Dobosu, 21-1236, Mr. Pincus. May it please the court. My name is Howard Pincus from the Federal Public Defender. I represent Coyote Dobosu. The five-year revocation term of supervised release, the District Court imposed, which extended Mr. Dobosu's prior five-year term by more than five years, is manifestly unreasonable. It is not justified on the grounds that the District Court gave. With no indication that Mr. Dobosu has engaged in any sexual misconduct for a very long time, and the District Court's operating belief that he would successfully complete sex offender treatment, the five-year term was far longer than was necessary. This court should vacate it as substantively unreasonable. The District Court cited the nature of the violation conduct, which consisted of three violations of the Sex Offender Treatment Agency's rules, but it seriously overweighted this factor. The first of the three factors was Mr. Dobosu's possession of internet-capable devices, but the probation officer who saw them on a visit in 2019 did not think they were a problem, and neither did Mr. Dobosu's caregivers. The prosecutor agreed that this factor was muted by these circumstances, and there was only one access to Facebook in 2017. The second factor was Mr. Dobosu's visits to places where there were children present. This was not on his own initiative, but through his day group. The prosecutor again thought that context made this less significant, and the District Courts viewed it as the product of miscommunication that was unlikely to recur in the future. Mr. Pinkins, let me answer your question on these arguments, and it really interrelates to the whole conception of substantive reasonableness. Now, we certainly had cases in affirming sentences saying, well, we look at the District Court's rationale to determine whether or not it provided a reasonable basis for the duration of the confinement as a reason to affirm. As a basis to reverse, are we limited to the rationale that the District Court gives because even though there is some conflation, I think, in some of our precedence between procedural reasonableness and substantive reasonableness, at the end of the day, our task is to determine, was there an abuse of discretion in giving a five-year supervised release term, frankly, without regard to the reasons that were given by the District Court? What's wrong with that? Well, the District Court's reasons are certainly the starting point. This Court has made clear that they inform this Court's review. If there's something here the District Court didn't rely on, then obviously the District Court didn't consider it in making its balance. If it committed an egregious mistake in failing to give proper credit to it, the same way as it gives too much weight, as we're arguing it did here, to the seriousness of the offense conduct, that could bear on the subject of reasonableness. But the starting point is certainly what the District Court gave. And here, whether you look at what the District Court gave or additional factors, the five-year term is just manifest and unreasonable. Turning back to the last of the three violations of RSA's rules, which the District Court looked to, and that was the fact that Mr. Dobosu had engaged in sexual texts with people and had pictures, graphic images, on his cell phone, on his flip phone. These were not with minors. There's nothing illegal about them. They were only problematic because of RSA's rules. And the District Court expected that Mr. Dobosu would be able to successfully complete the RSA treatment program going forward, and it imposed conditions on his access to computers and internet-capable devices and computer monitoring that would ensure that this would not interfere with his treatment going forward. So none of the three factors that the District Court looked to or that are embedded in the seriousness of the offense conduct support a four-year extension of his supervised release term. The District Court's other reasons do not support such an extension either. The first reason was his prior failures to register, but this was well in the past. The last formal allegation of it was his 2012 conviction as subject of New York on a SORNA violation. Before, the last indication of it, of any failure to report, was in his 2016 revocation here in the District of Colorado. He now has a full-time caregiver, separate and apart from the supervised release, and there have been no failures to register since Ms. Maven came on board in 2017, again, four years before the revocation hearing in this case. The second of the District Court's other reasons was the seriousness of Mr. Dobosu's original sexual offense, and it, of course, was quite serious, but it was also, at the time of the revocation hearing, 24 years in the past. Mr. Dobosu was released on that 1997 conviction in the State Courts of New York in 2000. He was out at the time of the revocation hearing for about 18 and a half years of the 21 years since 2000, and there was no indication of any sexual misconduct in that period. Not a single allegation. Let me ask you a question. You said he has a full-time caretaker? Yes. How is that arranged? I missed that. It's separate and apart from supervised release. It's not a condition of supervised release. It's not a condition of the RSA contract. It is something that's provided through Medicare or Social Security, and it helps him deal with his cognitive limitations and his difficulties in, or his needs in daily living activities. And this is somebody who is there to, who can help him make sure that he will comply with any RSA rules going forward, and that was stressed in the District Court. And so that's not an expense to him? No. And does he have to request it if he decides not to have it, or how is that handled? The record does not reveal that. I'm not sure what the answer to that is. But he has had somebody since, well, he had Rosalind in the beginning of 2017, and since she was on board, there have been, you know, she has been there to help him comply with rules. She has been no failures to register since she's been on board. We asked in the District Court that the rules of RSA be communicated directly to his care provider, so that there wouldn't be any miscommunication going forward. And the probation officer said, that's exactly what I intend to do, and whatever conversations are necessary, we will have, and I'm going to laminate the judgment and the conditions of RSA, or the rules of RSA, and post them in his bedroom, so there's no communication going forward. So what was a problem in the past, the District Court viewed some of this as a result of miscommunication. His going to a place with his day group... How did the court read... I'm sorry? How did the court address the fact that he did have this full-time caretaker now, who would be able to ensure compliance? Did the court address that at all? The court didn't... I don't think the court addressed that. The court did say his limitations could cut both ways, but what it was referring to was the fact that Mr. Dobosu needed transportation to and from sex offender treatment, that it was not a... that it was a day program, or, you know, a periodic program that he had to travel to. But it also, at the same time, said, well, this problem has been resolved. The probation officer thought the problem had been resolved, and it had been resolved, in large part, by the fact that his caregiver was aware and provided the necessary transportation and ensured the necessary transportation. So Mr. Dobosu has somebody who is with him, helping him, who said that she would help ensure that there were no problems going forward. And this is very different than a typical sex offender. On these facts, the five-year term of supervised release, the extension for another four years from then is manifestly unreasonable. Again, there were no sexual offenses for decades. And that is good reason to think he doesn't pose a danger. There was talk about sexual interests that were reflected in an assessment done by RSA. But, again, it seems behavior is problematic, and the probation officer said at the detention hearing that the purpose of the sex offender treatment is to change behavior, which isn't necessary here because there hasn't been a recurrence of behavior, and to change interests. So that's going to be addressed going forward by his completion of sex offender treatment. Did he have a caregiver at the time that he was exchanging pictures of male genitalia? Probably. It's unclear from the record exactly when those pictures were. They were on his phone, but exactly when they were, it's not entirely clear. And Ms. Maiden said she had looked through his phone, but whether she looked through everything and may have missed something, but everybody's aware of this now going forward, that this is a problem for RSA's rules. It's not a problem, of course, for a typical person to engage in sexual banter with somebody by text or to exchange pictures with consenting adults. What about the manipulation of these filtering devices on his PlayStation and the like? Did he have a caregiver at those times? There was no manipulation of any monitoring. I thought there was a deletion of his browsing history. Was a caregiver in place at that time? There was no indication of deletion of browser history. What the record shows is that they searched these devices for internet history and found only one access to Facebook in 2017. The computer and the PC and the laptop were not even connected to the internet. So they said they were going to check internet history and all they ever came up with was one access to Facebook in 2017. So some four years, maybe four and a half years before the revocation hearing. So there's not any of that here. Mr. Dubose's completion of the sex offender treatment program will reduce any residual risk and defense counsel representative can be completed within two years. And there was a commitment by everyone here to make sure that there was... Who said it could be completed within two years? Defense counsel. The prosecutor said two years might be sufficient in most cases but probably not in Mr. Dubose's situation because he hasn't completed in the past. And it's true he hasn't completed in the past. But he has had a head start on it by having done a lot of it already. And we now have this commitment to know what these rules are by everybody involved, by somebody who's with Mr. Dubose 24-7 who has eyes on him at all times. She explained that there have been no times when anybody's come into the house to be with him, spend any time with him. He's supervised at the house. He now will have somebody going with him when he goes to sex offender treatment program. So it's really not the kind of risk. And once sex offender treatment is completed, it will address the interest component of it. And again, there has been no actual sexual misconduct. His continuing registration will also serve the function of protecting the public and here too, there haven't been any problems since Ms. Maven entered the picture in 2017. On these facts, it was manifestly unreasonable for the district court to extend Mr. Dubose's term of supervision by four years so that he will spend 13 years on supervised release for a SORNA violation in which he was given five years of supervised release in the first instance. This court should vacate Mr. Dubose's five-year term of supervised release and remand for the imposition of a lesser term. Thank you. Ms. Malani. May it please the court. Elizabeth Ford Malani on behalf of the United States. Mr. Dubose's arguments boil down to his disagreement on the impact of his history in the criminal justice system and the best way to protect the community and provide his correctional treatment moving forward. These arguments were before the district court. The court simply disagreed that Mr. Dubose's view necessitated a shorter term of supervised release than five years. That decision was neither arbitrary, capricious, whimsical, or manifestly unreasonable. Judge Beckerach, I want to start with a question that you asked my opposing counsel which is, how do we take what the district court said at sentencing? And the Barnes case cited in the government's brief, I would just direct you to that case. It quotes another case called Rents, which talks about both the record and the district court's state of reasoning provide us an adequate basis to assess the substantive reasonableness of the sentence imposed. So I think that what that stands for is that indeed, substantive reasonableness is a totality of the circumstances analysis. And looking at the totality of those circumstances here, Mr. Dubose has never completed sex offender treatment. The violations in this case, with the one exception that we don't exactly know when those text messages occurred, but they were discovered when he had a caregiver. The day group trips to child-centric locations also occurred when he had a caregiver. And I will point out, the district court, in talking about the ankle bracelet, which was a separate issue before the parties in the district court below, said that those day group trips appeared to have been a result of a miscommunication. Well, I will point out that the record shows, in the superseding revocation petition, the defendant's residential community team were aware the defendant could not visit these locations without prior approval. This was discussed in detail in December 2017, October 2018, and again on February 26, 2020. Now, after there was a certain stretch where Mr. Dubose visited those child-centric locations, he was placed on a low therapeutic intervention contract. That concluded in June 2020. But then those day groups, those child-centric locations occurred again. So I think that considering this history, considering that assessment that showed an atypical sexual interest in children, the district court did not abuse its discretion in saying, these unique facts do not necessarily warrant prison. And here they don't. But to give this person the best chance at completing the sex offender treatment, and to give the public the best chance at protection, a five-year term is what's appropriate here for supervised release. I do want to point out that the key argument that Mr. Dubose seems to raise is that the district court tied its sentence to the term it would take to complete sex offender treatment, and that the district court believed that he would do so. I do want to push back that that was the finding by the district court. The district court said, we all hope and expect that Mr. Dubose will complete sex offender treatment. In context, in reading the sentencing transcript, this does seem hopeful and perhaps aspirational, but I don't think it's a finding that the court believes that he will complete sex offender treatment, and certainly not a finding that he would not violate his sex offender contract in the future with RSA, as argued in the opening brief at 21. As well, Mr. Dubose raises several reasons why the violations of his sex offender treatment contract were not particularly troubling and not particularly serious. I don't disagree that there hasn't been a hands-on sexual assault since 1997, according to this record, or anything of that nature. But weighing everything that has happened here, and that this was the third revocation for this particular defendant since 2012, since the SORNA violation conviction, it wasn't unreasonable for the court to believe that supervision here is really necessary to help with the correctional needs. One final point. To the extent that Mr. Dubose was arguing that the court didn't properly consider the fact that Mr. Dubose has a full-time caregiver, it's true that the court didn't really discuss that in its sentencing findings at the conclusion of the hearing, but to me that really boils down to an argument that the court didn't give enough weight to a particular mitigating factor here in the existence of caregivers. But that was certainly before the court. The court never said, I'm not considering that. It's just that other needs under 3553A, as well as specific to this defendant, required a five-year term of supervised release. Did the defense make an argument that the fact that he had a full-time caregiver essentially negated the need for supervised release? Was that argument made by the defendant? That it didn't require the length. So the defense had asked for two years of supervised release, saying that these other considerations, including the caregiver... I'm sorry, who had asked for two years? The defense. Mr. Dubose had asked for two years of supervised release. Presumably pegged to the time it would take to complete the sex offender treatment. But again, the record doesn't speak to how long exactly that would take, but five years isn't an unreasonable chance to give him. I think I may not have phrased my question very well. Did the defense argue that supervised release was not necessary or was much less necessary because he was essentially being supervised 24-7 by a full-time caretaker? Was that argument made to the district court? Not in terms of asking for no supervised release. But in asking for a shorter term, yes. What was the argument then? I don't have it verbatim in front of me. It seems a little inconsistent to argue that the full-time caregiver made supervised release unnecessary, but then argued for two years of supervised release unless the program was not available, unless he was on supervised release. Is that correct? There really isn't information in the record about how Mr. DeBosu qualified or applied for this program. As mentioned, there's a discussion that was paid through via Social Security or perhaps Medicare or Medicaid. So there's really not a lot of information about the nuts and bolts of the full-time caregivers. No, I'm sorry. The program that he could complete in two years, was that available only if he were on supervised release? That I also don't believe is in the record. I'm not sure of that. It wasn't provided by the Justice Department or something like that? Right. But on the flip side, the supervised release terms required that he complete that program. So they were tied together in that other way. Like I said, the district court took all these myriad considerations into account informing what it thought was a reasonable sentence not only to provide protection for the public but correctional treatment for this particular person. And these are unique facts. And the government did argue that many of the circumstances here muted the impact of some of the violations. But I also think it's important to keep in mind that in arguing that some of the conduct was muted the government was saying jail time or prison time isn't appropriate here. That's why supervised release five years is appropriate here instead. So it's not that a shorter period of supervised release was appropriate but that no incarceration was appropriate. Thank you. I don't have a question. Oh, I have a question. Oh, were you? I thought you were talking to me. Go ahead. I'm not asking a question. Sorry. But I have a question. And it goes back to something that you discussed at the outset and you were mentioning in Barnes where the court affirmed the sentence over a challenge of substantive reasonableness. One of the important issues about whether two years was more appropriate than five years or whether five years was too long is his prior violations of the RSA treatment contract. And if we side with Mr. Pincus' part of this argument that defense counsel made an unrebutted argument that he could complete the program in two years prosecutor never said no, that's not right that he could complete it within two years and if we say the word expect means expect maybe he was just being nice and hopeful and optimistic but obviously if you look up the word expect in the dictionary it means what Mr. Pincus says it means. So if he expected the judge expected him to comply with the RSA treatment contract and that was the principal reason that he was going to extend his supervised release for four years and if the government says well his violations of the RSA treatment contract for purposes of confinement he doesn't need any more than eight days of time served muted the significance of that why isn't it substantively unreasonable to say well I'm going to extend it for four years even though I expect him to complete it within two years and it's muted as the prosecutor even acknowledged because he has this full time caregiver why doesn't that amount to an abuse of discretion because that was the elephant in the room that he had violated the treatment contract in several ways and that there was now an expectation that he would complete it apparently within two years so a couple points on that I will direct you to the sentencing hearing transcript volume 4 page 35 this is from the district court imposing sentence moreover just based upon the violation that he has admitted to today that demonstrates also to me that he is going to continue to need close supervision in order to make sure that he does not pose a risk to the community and I think that that's important because I think that what the court's saying there is even separate and aside from sex offender treatment there's still the community to be concerned about so I don't think that's substantively unreasonable to say even if the premise of your question is true even if that's what happened in the record which I don't agree with entirely it's still not substantively unreasonable to say that's not the only consideration here before the court and in order to effectuate the 3553A factors the five-year term was substantively reasonable to protect the community and these other things and I would push back on I think that the government said didn't agree necessarily that sex offender treatment could be completed within two years and also I just really want to point the court to the district court's findings of sentencing talking about numerous reasons why five years was appropriate not just the sex offender treatment so if the court has any other questions the government respectfully asks that this court affirm thank you Mr. Pankis you have a little over a minute in terms of the statements of the probation officer in the amended petition the district court believed that these problems were a result of miscommunication and that finding isn't out of the deference in terms of Mr. Devosu posing a risk and the district court did say that he needs supervision to the extent that it's based on actual misconduct we don't have any of that it has to be based on these interests that he has the sex offender treatment program by the probation officer's own words were designed to change not only behavior but interests so if he completes that, that will be reduced or eliminated and that's why we requested a two-year term because a two-year term would allow him to complete sex offender treatment the prosecutor did say, in general, yes but maybe not from Mr. Devosu but the probation officer stressed that this was the only program she would want him in because it's an excellent program for somebody with disabilities and with the assistance of his caregiver with her or the caregivers being on top of this and ensuring that there aren't the problems that there were in the past it's unreasonable to think that it would take more than two years and certainly not an additional two years beyond that so we would ask this court to reverse Thank you